Peter Michael Meloy
MELOY LAW FIRM
P.O. Box 1241
Helena, MT 59624
(406) 442-8670
mike@meloylawfirm.com
*Attorney for Plaintiffs*

## IN THE MONTANA FIRST JUDICIAL DISTRICT COURT
## LEWIS AND CLARK COUNTY

|  |  |
|---|---|
| JAMES LARSON, DONALD JUDGE and JEAN PRICE, individual electors, and MONTANA DEMOCRATIC PARTY, | Case No. |
| Plaintiffs, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| vs. | |
| STATE OF MONTANA, by and through its SECRETARY OF STATE, COREY STAPLETON, | |
| Defendant, | |
| and | |
| THE MONTANA GREEN PARTY | |
| Interested Party. | |

As and for their claim for relief against the above-named Defendants,

Plaintiffs allege as follows:

139274844.6

## I.    INTRODUCTION

1.    Montana law offers political parties multiple ways to qualify to nominate their candidates by primary election and thereby obtain general election ballot access. First, parties can qualify based on past electoral success of a statewide candidate, who received at least 5% of the number of votes cast for the current Montana Governor. Second, even in the absence of this modest showing of electoral success, a political party can qualify by gathering a certain number of signatures of registered voters in the State pursuant to Section 13-10-601, MCA (the "Political Party Qualification Statute"). Thus, Montana, consistent with other states, conditions ballot access in both primary and general elections "on a showing of a modicum of voter support." *Munro v. Socialist Workers Party*, 479 U.S. 189, 196 (1986).

2.    The Political Party Qualification Statute allows political parties that fail to meet the 5% statewide vote threshold to qualify by submitting a petition containing a total of 5,000 signatures and a certain required number of signatures in at least 34 of the 100 Montana House of Representatives ("House") Districts. The required threshold number of signatures varies in each House District. For example, the threshold signature number is: (1) 140 signatures in House District 20; (2) 135 signatures in House District 21; (3) 105 signatures House District 43; (4) 130 signatures in House District 54; (5) 101 signatures in House District 56; (6)

2

132 signatures in House District 80; (7) 150 signatures in House District 83; and (8) 150 signatures in House District 84.

3.      Pursuant to this statute, fifteen individuals submitted packets of petitions to county officials for certification by the Secretary of State ("Secretary") to obtain ballot access for Green Party candidates in Montana elections (collectively, the "Petition"). The vast majority of the signatures contained in these petitions were collected in the three weeks before the March 5, 2018 deadline for all signatures to be submitted to county officials. These late-collected signatures appear to have been gathered by a for-profit, out-of-state company, relying heavily on individuals who listed out-of-state addresses on their signature gatherer affidavits.

4.      On March 12, 2018, the Secretary certified the Montana Green Party (the "Green Party") pursuant to the Political Party Qualification Statute based on a necessarily rushed review of the Petition. While the majority of the Petition signatures were collected a week or more in advance of the March 5, 2018 deadline, no signatures collected during the final signature gathering effort were submitted prior to March 4, 2018, leaving both county officials and the Secretary with mere days to review and certify thousands of Petition signatures. A careful, more thorough review of the Petition signatures submitted and initially counted in three Montana counties, conducted absent the time pressure imposed by the

statutory deadlines, has established that the Petition only contains the requisite

number of valid signatures in no more than 29 House Districts, falling short of the

34 such House Districts needed under the Political Party Qualification Statute, as

Table 1 illustrates.

*Table 1: Signatures by House District*

| County | House District | Total Signatures Accepted by SOS | Total Signatures Required under MCA 13-10-601 | Actual Total of Valid Signatures after Review | Total Invalid Signatures Accepted by SOS |
|---|---|---|---|---|---|
| Cascade | House District 19 | 101 | 102 | 88 | 13 |
| | House District 20 | 145 | 140 | 119 | 26 |
| | House District 21 | 141 | 135 | 117 | 24 |
| Yellowstone | House District 43 | 107 | 105 | 90 | 17 |
| | House District 54 | 141 | 130 | 129 | 12 |
| | House District 56 | 103 | 101 | 90 | 13 |
| Lewis & Clark | House District 80 | 138 | 132 | 110 | 28 |
| | House District 83 | 161 | 150 | 133 | 28 |
| | House District 84 | 151 | 150 | 132 | 19 |
| **Grand Total** | | | | | **180** |

5.    This review has revealed that at least 180 signatures and petition

entries originally counted as valid are, in fact, invalid.[1] These invalid petition

entries include: (1) at least 35 petition entries that do not contain a valid signature;

(2) at least 171 signatures that are not signed in substantially the same manner as

the elector's voter file signature; (3) at least 7 signatures that contain an incorrect

or invalid date; (4) at least 5 signatures that do not contain a printed name; and (5)

---

[1] In particular, as set forth in detail below, 26 signatures originally counted as valid are, in fact, invalid in House District 20; 24 signatures in House District 21; 17 signatures in House District 43; 12 signatures in House District 54; 13 signatures in House District 56; 28 signatures in House District 80; 28 signatures in House District 83; and 19 signatures in House District 84. In addition, 13 signatures originally counted as valid in House District 19 are, in fact, invalid.

4

at least 6 signatures that were matched erroneously to, or were not from, a Montana registered voter.[2]

6.     Thus, Plaintiffs seek a declaration that the Petition, as well as the Secretary of State's certification, is invalid pursuant to the Political Party Qualification Statute and an injunction enjoining the Secretary of State, as well as his agents, officers, employees, and successors, and all persons acting in concert with each or any of them, from implementing, enforcing, or giving any effect to certification of the Green Party's Petition under Section 13-10-601.

7.     In the absence of such declaratory and injunctive relief, the Green Party will be allowed to circumvent Montana law in qualifying for ballot access (and using state election resources in the process), without having the required modicum of support. This outcome would thus encourage "frivolous candidates [in] clogging the ballot and [in] confusing voters." *Swanson v. Worley*, 490 F.3d 894, 911 (11th Cir. 2007).

## II.    PARTIES

8.     Plaintiffs James Larson, Donald Judge and Jean Price are registered electors in the State of Montana, residing in Yellowstone, Lewis and Clark, and Cascade Counties. Plaintiffs affiliate with the Democratic Party, have supported Democratic candidates for federal, state, and local office in the past, and plan to do

---

[2] Though, some of these petition entries fall into more than one of the above categories of invalidity.

so again, including in the 2018 general election. Plaintiffs have been involved in voter registration, voter education, and get-out-the-vote activities on behalf of Democratic candidates, and they plan to engage in such activities for the 2018 general election. If the Secretary of State's certification of the Green Party as a qualified party that may nominate its candidates by primary election is not found to be invalid, Plaintiffs will suffer a concrete injury. In particular, if candidates claiming to be affiliated with the Green Party obtain ballot access in the 2018 general election through a contested or uncontested Green Party primary election, Plaintiffs will have to divert their efforts and resources to educate and persuade voters to support Democratic candidates over candidates claiming to be affiliated with the Green Party, as would be the case if any other unqualified political party were added to the ballot.

9.      Plaintiff Montana Democratic Party is a political party established pursuant to Section 13-38-101 *et. seq*. MCA. Its mission is to elect Democratic Party candidates in local, county, state, and federal elections. Its right, status, or other legal relations have been affected by the Defendants' actions pursuant to the Political Party Qualification Statute. In particular, allowing the Green Party to qualify for a primary election here, and thus obtain general election ballot access, would result in the Montana Democratic Party having to expend additional funds and resources to educate and persuade voters to support Democratic candidates

6

over candidates claiming to be affiliated with the Green Party, as would be the case
if any other unqualified political party were added to the ballot. This injury will be
particularly acute here, as at least some candidates seeking the Green Party's
nomination appear to have long-standing affiliations with the Democratic Party's
primary political rival, the Republican Party, and are seeking the Green Party's
nomination to act as "spoiler" candidates, rather than to advance the Green Party's
stated principles and values. For example, Green Party Senate candidate, Timothy
Adams, was previously on the payroll of the Montana Republican State Central
Committee. *See* Griffin Connolly, *Montana Green Party Senate Candidate Was
Once on State GOP Payroll*, ROLL CALL (Mar. 14, 2018)
https://www.rollcall.com/news/politics/montana-green-party-senate-candidate-
state-gop-payroll.

    10.    Defendant State of Montana is acting in this matter through Defendant
Corey Stapleton, the duly elected Secretary of State (the "Secretary"). The
Secretary is the chief elections officer of the State of Montana and is responsible
for maintaining uniformity in the application, operation, and interpretation of
election laws. Section13-1-201, MCA. In carrying out these responsibilities, the
Secretary has the duty of preparing and delivering to election administrators
written directives and instructions relating to election law. Section 13-1-202(1),
MCA. In particular, the Secretary is charged with certifying political parties and

7

candidates for participation in a primary election, as well as with creating the form

used by petitions to qualify under the Political Party Qualification Statute. The

Secretary is named as a Defendant solely in his official capacity.

11.    Interested party, the Green Party of Montana, is a political committee

organized under the laws of the State of Montana. On or around January 29, 2014,

the Green Party filed a Form C-2 "Statement of Organization," promulgated by the

Commissioner of Political Practices, as a "Political Party Committee." The Green

Party is named as a party to this action because it may have or claim an interest,

which would be affected by the Plaintiffs' request for declaratory relief. Section

27-8-301, MCA.

### III.    JURISDICTION AND VENUE

12.    The Court has jurisdiction to grant declaratory and injunctive relief

pursuant to the Montana Uniform Declaratory Judgments Act, Section 27-8-101 *et.*

*seq*. MCA, and Sections§ 27-8-201 *et seq.*, MCA, which authorize the Court to

declare rights, status, and other legal relations among the parties.

13.    Venue is proper in this Court under Section 25-2-126, MCA because

it is an action against the State of Montana, and Plaintiff Judge is a resident of

Helena, Montana. *See* Section 25-2-126(1), MCA.

### IV.    FACTUAL ALLEGATIONS

### A. Montana's Political Party Qualification Statute

14.     Montana offers political parties multiple ways to nominate candidates for office and to obtain general election ballot access, including through the Political Party Qualification Statute.

15.     The Political Party Qualification Statute allows qualification of a political party to nominate its candidates by primary election through the submission of petition signatures from a sufficient number of Montana voters. *See* Section 13-10-601(2)(a), MCA (providing that a political party "may qualify to nominate its candidates by primary election by presenting a petition, in a form prescribed by the secretary of state, requesting the primary election"). Specifically, the Political Party Qualification Statute requires that petitions "be signed by a number of registered voters equal to 5% or more of the total votes cast for the successful candidate for governor at the last general election or 5,000 electors, whichever is less." *Id.* at (2)(b). The relevant threshold to qualify a political party for the June 5, 2018 primary election was at least 5,000 valid signatures of electors. *See id.*

16.     The Political Party Qualification Statute also sets forth the specific requirement that "[t]he number [of signatures on the petition] must include the registered voters in *more than one-third of the legislative districts* equal to 5% or more of the total votes cast for the successful candidate for governor at the last general election in those districts or 150 electors in those districts, whichever is

less." (Emphasis added). For the June 5, 2018 primary election, a petition was

required to contain between 55 and 150 valid signatures from at least 34 House

Districts. *See* Information for Political Party Qualification, MONTANA SECRETARY

OF STATE (updated August 21, 2017)

http://sos.mt.gov/Portals/142/Elections/Documents/Officials/Political-Party-

Qualification-Info.pdf. Specifically, signatures were required from: (1) 140

registered voters in House District 20; (2) 135 registered voters in House District

21; (3) 105 registered voters in House District 43; (4) 130 registered voters in

House District 54; (5) 101 registered voters in House District 56; (6) 132 registered

voters in House District 80; (7) 150 registered voters in House District 83; and (8)

150 registered voters in House District 84, among the other House Districts. *See id.*

17.     The Political Party Qualification Statute also sets forth the

requirement that signatures on a petition must comply with the Secretary of

State's designated petition form. *See* Section 13-10-601(2)(a), MCA (requiring a

political party to "present[] a petition, *in a form prescribed by the secretary of*

*state*, requesting the primary election") (emphasis added); *see also Id.* at (2)(c)

("[T]he petition and the affidavits of circulation required by 13-27-302 must be

presented to the election administrator of the county in which the signatures were

gathered to be verified under the procedures provided in 13-27-303 through 13-

27-306.").

18.     The Secretary's designated petition form requires signers to include

their "Signature," the "Date Signed," their "Residence Address or Post-Office

Address or Home Telephone Number," and their "Printed Last Name and First

and Middle Initials." Political Party Qualification Petition, *Montana Secretary of*

*State* http://sos.mt.gov/Portals/142/Elections/Documents/Officials/Political-Party-

Qualification-Petition.pdf. In addition, the Secretary of State's form explicitly sets

forth that "[e]ach person is required to sign the person's name and list the person's

address or telephone number in substantially the same manner as on the person's

voter registration card or the signature *will not be counted*." *Id.* (emphasis added).

19.     In terms of timing, the Political Party Qualification Statute provides

that "[a]t least 1 week before the deadline provided in subsection (2)(d) [which is

85 days before the date of the primary election], the petition and the affidavits of

circulation required . . . must be presented to the election administrator of the

county in which the signatures were gathered to be verified." Section 13-10-

601(2)(c), MCA. Thus, for the June 5, 2018 primary, the deadline for petition

signatures to be submitted to county elections administrators was March 5, 2018.

*See id.*

20.     After a petition is presented to an election administrator of the county,

county officials engage in a verification process, as is required by the Political

Party Qualification Statute. *See Id.* ("[T]he petition and the affidavits of

11

circulation required by 13-27-302 must be presented to the election administrator of the county in which the signatures were gathered to be verified under the procedures provided in 13-27-303 through 13-27-306."). In particular, county officials are required to "check the names of all signers to verify they are registered electors of the county." Section 13-27-303(1), MCA. "In addition, the official shall randomly select signatures on each sheet or section and compare them with the signatures of the electors as they appear in the registration records of the office." *Id.* "If any of the randomly selected signatures do not appear to be genuine, all signatures on that sheet or section must be compared with the signatures in the registration records of the office." *Id.* Accordingly, the Political Party Qualification Statute does not require that election officials review and compare *every* petition signature with the signature of the voter in the voter registration record during this verification process.

21.     If, after conducting the required verification process, county officials verify a petition, the Political Party Qualification Statute requires "[t]he election administrator [to] forward the verified petition to the secretary of state at least 85 days before the date of the primary." Section 13-10-601(2)(d), MCA. Thus, the deadline for county elections administrators to forward verified petitions to the Secretary of State for the June 5, 2018 primary was March 12, 2018. *See id.*

22.     The Secretary is the individual who certifies political parties and candidates for participation in a primary election. *See* Section 13-10-208, MCA.

**B. The Signature Gathering Process regarding the Petition**

23.     The Petition at issue in this case seeks "that in accordance with 13-10-601, MCA, the names of the candidates running for public office from the Green party be nominated as provided by law." Political Party Qualification Petition, Ex. 1.

24.     In the summer of 2017, two leaders of the Montana Green Party, Danielle and Thomas Breck, began efforts to gather signatures for the Petition. By the early summer, they had submitted to Missoula County just over seven hundred signatures. *See* Petition Certifications and Affidavits, Ex. 2. Neither Danielle Breck nor Thomas Breck collected or submitted any signatures after June of 2017.

25.     Then, in the final 19 days before the Petition's deadline, 13 individuals collected over 9,000 signatures across four counties in Montana. Ex. D to Laliberte Aff. This group of signature gatherers averaged over 500 signatures per day during this period. Evidencing the extraordinary petition gathering efforts, one signature gatherer, Rowan Bear, reported personally collecting, on a single Friday in February, over 90 signatures from residents of Cascade County and over 50 signatures from residents of Yellowstone County—despite the more than four-hour driving distance separating these two counties. Ex. E to Laliberte Aff.

26.    It is believed that a for-profit, out-of-state company, Advanced Micro-Targeting Inc. ("A.M.T."), acquired these thousands of signatures in the 19-day period, due to the volume of signatures collected within such a short amount of time, and because of the individuals involved in the effort. For example, the President of A.M.T., William Rogers, reportedly dropped off Petitions in Missoula. *See* Holly Michels, *Out-of-State Political Group was Hired to Help the Green Party Qualify for Montana's Ballot, Democrats Say*, HELENA INDEPENDENT Record (Mar. 29, 2018), http://helenair.com/news/government-and-politics/montana-democrats-question-if-political-firm-helped-get-green-party/article_65d0089b-27be-5283-b9ae-637ef25f2b57.html. In addition, at least one Petition circulator, Cody Pope, the self-described state director of the Green Party qualification initiative, works for A.M.T. *See* COPP Compl., Ex. 3, at 6-7; *see also* Holly Michels, *Out-of-State Political Group was Hired to Help the Green Party Qualify for Montana's Ballot, Democrats Say*, HELENA INDEPENDENT RECORD (Mar. 29, 2018), http://helenair.com/news/government-and-politics/montana-democrats-question-if-political-firm-helped-get-green-party/article_65d0089b-27be-5283-b9ae-637ef25f2b57.html. At least six other individuals who listed out of state addresses on their signature gatherer affidavits circulated the Petition. Laliberte Aff., at 8-9.[3] It is not known who paid A.M.T.,

---

[3] Two other signature gatherers, while listing Montana residence addresses on their

which is a firm generally associated with the Republican Party. *See* COPP

Complaint, Ex. 3 at 3-8; *see also* Riley Snyder, *Connecting the Dots: Out-of-State*

*Money Dominates Donations to Groups Supporting, Fighting State Senate*

*Recalls*, THE NEVADA INDEPENDENT (Dec. 13, 2017),

https://thenevadaindependent.com/article/connecting-the-dots-out-of-state-money-

dominates-donations-to-groups-supporting-fighting-state-senate-recalls.

## C. The Petition Review Process

27.      While the vast majority of the thousands of signatures on the Petition

were obtained prior to March 5, 2018, *see* Ex. D  to Laliberte Aff., and thus could

have been turned in earlier to county officials for verification, the signature

gatherers waited until March 4 or 5 to submit the petitions, *see* Laliberte Aff., at 5,

leaving county officials with only five business days to review, in some cases,

thousands of submitted signatures before the March 12, 2018 deadline to send any

valid petitions to the Secretary. Missoula County, for example, received around

3,000 Petition signatures and thus had the duty to review that number of

signatures in a short amount of time. Mike Dennison, *Montana Green Party*

*Makes Last-Minute Push to Qualify Candidates for 2018 Ballot*, KPAX (Mar. 6,

2018), http://www.kpax.com/story/37652683/montana-green-party-makes-last-

minute-push-to-qualify-candidates-for-2018-ballot.

---

signature gatherer affidavit, do not appear to be registered to vote in Montana. *See*
Laliberte Aff., at 9.

28.    Because of the time constraints, election workers were "scrambling to verify and submit the signatures to the secretary of state's office." *Id.* (emphasis added). The Missoula Elections Supervisor even admitted to the press: "[w]e've got a big push." *Id.*

29.    Cascade and Lewis and Clark Counties completed their review and submitted their verified signatures to the Secretary by March 6, Yellowstone did so by March 7, and Missoula did so by March 9. These Counties collectively rejected 2,771 signatures for a variety of reasons, including, but not limited to, because the signers were not registered to vote, signatures were duplicates, and signatures were illegible. Lewis and Clark, Yellowstone, and Missoula Counties reported rejecting between 2% and 5% of Petition signatures for failing to match the voter registration signature on file; Cascade County reported rejecting only 0.2% of signatures for this reason. *See* Ex. C to Laliberte Aff.

30.    On March 12, 2018, the Secretary certified the Petition, concluding that it contained at least 7,389 valid signatures, including the minimum number of signatures from 38 House Districts. Ex. A to Laliberte Aff. Thus, the Secretary declared the Petition valid and certified the Green Party for participation in the June 2018 primary election.

**D. Allegations Giving Rise to the Instant Lawsuit**

31.    Despite the Secretary's certification of the Petition on the last possible

day, a more thorough, careful review of the signatures has been conducted in three counties, and the results of the review show that the Petition does not contain the requisite number of valid signatures in at least 34 House Districts, as is required by the Political Party Qualification Statute.4 Instead, the number of valid signatures on the Petition from eight House Districts falls short of the requirement. In particular, there are at most: (1) 119 valid signatures from House District 20, falling short of the 140 signatures required; (2) 117 valid signatures from House District 21, falling short of the 135 signatures required; (3) 90 valid signatures from House District 43, falling short of the 105 signatures required; (4) 129 valid signatures from House District 54, falling short of the 130 signatures required; (5) 90 valid signatures from House District 56, falling short of the 101 signatures required; (6) 110 valid signatures from House District 80, falling short of the 132 signatures required; (7) 133 valid signatures from House District 83, falling short of the 150 signatures required; and (8) 132 valid signatures from House District 84, falling short of the 150 signatures required. In addition, in House District 19, which the Secretary's certification showed one signature short of the required 102 signatures required, the number of valid signatures was, at most, 88.

---

[4] While Lewis and Clark County provided Plaintiffs with copies of voters' signatures in the voter file, Cascade and Yellowstone Counties have refused to do so, despite the fact that they allowed in-person review of such signatures. Thus, Plaintiffs have filed a motion to compel the signatures in the Cascade and Yellowstone Counties' voter files for the Court's review and reference.

32.        In particular, signatures and petition entries in these House Districts,

which were originally counted as valid, are, in fact, invalid when they: (1) do not

contain a valid signature; (2) are not signed substantially in the same manner as the

Montanans' voter file signature; (3) have an incorrect or improperly changed date;

(4) lack an accompanying printed name; and (5) were matched erroneously to, or

were not from, a Montana registered voter. Some signatures are invalid on multiple

grounds, as set forth in Table 2: Grounds for Invalidity below. In light of these

invalid signatures and petition entries, the Petition is invalid, as well as the

Secretary's certification.

*Table 2: Grounds for Invalidity*

| County | House District | Signature Does Not Match | Other Grounds for Invalidity | Signature Does Not Match and Other Grounds for Invalidity | Grand Total |
|---|---|---|---|---|---|
| Cascade | House District 19 | 13 | | | 13 |
| | House District 20 | 26 | | | 26 |
| | House District 21 | 20 | | 4 | 24 |
| Yellowstone | House District 43 | 15 | 2 | | 17 |
| | House District 54 | 11 | | 1 | 12 |
| | House District 56 | 12 | | 1 | 13 |
| Lewis & Clark | House District 80 | 24 | 4 | | 28 |
| | House District 83 | 22 | 2 | 4 | 28 |
| | House District 84 | 17 | 1 | 1 | 19 |
| **Grand Total** | | **160** | **9** | **11** | **180** |

**1. Petition Entries That Do Not Contain a Valid Signature are Invalid**

33.    The Political Party Qualification Statute requires that a petition "must be signed" to qualify a political party to nominate candidates in a primary election. Section 13-10-601(2)(b), MCA; *see also* Section 13-10-601(2)(a), MCA (requiring a political party to "present[] a petition, in a form prescribed by the secretary of state, requesting the primary election"); Montana Secretary of State, Political Party Qualification Petition, Ex. 1 (stating "[e]ach person is required to sign the person's name . . . in substantially the same manner as on the person's voter registration card or the signature will not be counted.") (emphasis added); Section 13-27-302, MCA (requiring signature gatherer to swear that he has "gathered the signatures on the petition") (emphasis added).

34.    This explicit signature requirement is not met when a petition entry: (1) contains no signature of the actual voter; or (2) only contains a printed name (and not a cursive signature), as a printed name does not constitute a signature under Montana law. *See* Section 13-10-502, MCA (distinguishing between requirement for a "signature" and the "printed last name of the signer" on a party nomination petition); *see also W. Mont. Water Users Ass'n, LLC v. Mission Irrigation Dist.*, 2013 MT 92, ¶ 39, 369 Mont. 457, 466, 299 P.3d 346, 353 (2013) ("We seek to avoid any statutory interpretation that would render meaningless any statute, or section thereof, and not give effect to the statute.") (citation omitted); *State ex rel. Rogers v. Taft*, 64 Ohio St. 3d 193, 197 (1992) (holding that because a

statute distinguished between a "signature" and a printed name, the legislature "obviously did not mean to include printing within the term 'signature'" in the petition context).

35.      Here, at least 35 petition entries originally counted as valid are, in fact, invalid due to the lack of a signature of the voter. *See In re Nader*, 865 A.2d 8, 175 (Pa. Commw. Ct.) (rejecting printed names as valid signatures), *aff'd sub nom. in re Nomination of Nader*, 580 Pa. 134, 860 A.2d 1 (2004). One entry signed explicitly by someone other than the voter and 36 entries containing a printed name are thus not valid. *See* Ex. E to Dick Aff., at 2-10; Ex. F to Dick Aff., at 2-9; Ex. A to Bolger Aff., at 2-20. In terms of House District breakdown, 3 signatures are invalid on this basis in House District 19; 7 signatures in House District 26; 9 signatures in House District 21; 1 signature in House District 43; 3 signatures in House District 54; 4 signatures in House District 56; 1 signature in House District 80; 4 signatures in House District 83; and 3 signatures in House District 84.

### 2. Petition Entries are Invalid Because They are Not in Substantially the Same Manner as the Voter File Signature

36.      As the Secretary of State's own petition form states: "[e]ach person is required to sign the person's name . . . in substantially the same manner as on the person's voter registration card or the signature will not be counted." Montana Secretary of State, Political Party Qualification Petition, Ex. 1 (emphases added); see also Section 13-10-601(2)(a), MCA (requiring a political party to "present[] a

20

petition, in a form prescribed by the secretary of state, requesting the primary

election"); Section 13-27-103, MCA (West) ("A signature may not be counted

unless the elector has signed in substantially the same manner as on the voter

registration form."); Section 13-27-303, MCA (requiring county officials to

"randomly select signatures on each sheet or section and compare them with the

signatures of the electors as they appear in the registration records of the office").

Thus, petition entries that are not substantially similar to voters' signatures in their

voter file are invalid and cannot be counted toward the required Petition threshold.

*See Montana Outfitters Guides Ass'n v. State*, No. BDV-2010-807, 2010 Mont.

Dist. LEXIS 411 (Mont. Jud. Dist. Ct. Oct. 18, 2010) ("Forged signatures which do

not match the signature on the voter's registry card . . . are obviously

disqualifying.").

37.     Here, at least 171 petition entries originally counted as valid are, in

fact, invalid because they are not substantially similar to the voter file signature,

because: (1) one is in print, and the other is in cursive; (2) one uses abbreviations

or initials, and the other does not; (3) one uses a full name, whereas the other uses

just a first or last name; (4) the signatures use different names; (5) the signatures

are spelled differently; (6) one signature consists of "chicken scratch," whereas the

other is much more clearly articulated; and (7) when the signatures contain other

differences recognized by the Montana Secretary of State. *See* Ex. E to Dick Aff.,

21

at 1-75; Ex. F to Dick Aff., at 1-46; Ex. A to Bolger Aff., at 2-69.

### i.    Petition Entries that Consist of Printed Names Are Not in Substantially the Same Manner as Cursive Signatures

38.    Petition entries are invalid when they are in print, and the voter file signature is in cursive (and vice versa), because such entries are not substantially in the same manner. *See, e.g., Quercia v. Bernstein*, 87 A.D.3d 652, 653(N.Y. App. Div. 2011) (invalidating two candidate nominating petition entries that were made in print because they "d[id] not match the signatures on the corresponding [voter] registration forms, which were written in script" and thus "did not meaningfully compare"); *Bd. of Educ. v. Pollastrini*, 995 N.E.2d 547, 550 (Ill. App. Ct. 2013) (holding signature "in cursive" invalid, when the voter registration card entry was in print under the "substantial compliance standard").

39.    Here, the Petition contains at least 34 signatures that were originally counted as valid, but are, in fact, invalid, because the printed name on the Petition does not match the cursive signature in the voter file (or vice versa). *See* Ex. E to Dick Aff., at 3-10; Ex. F to Dick Aff, at 2-9; Ex. A to Bolger Aff., at 2-20. In terms of House District breakdown, at least 3 signatures are invalid on this basis in House District 19; 7 signatures in House District 20; 9 signatures in House District 21; 1 signature in House District 43; 3 signatures in House District 54; 4 signatures in House District 56; 1 signature in House District 80; 3 signatures in House District 83; and 3 signatures in House District 84.

ii.   **Petition Entries are Invalid Because Signatures Using Initials or Abbreviations are Not in Substantially the Same Manner as Full Names**

40.    Petition entries are invalid because signatures that use initials or abbreviations are not in substantially the same manner as full name signatures. *See In re Nader*, 865 A.2d at175, (finding "[s]ignatures using nicknames . . . that differ from voter registration cards are not valid," and striking such signatures), *aff'd sub nom.* 580 Pa. 134 (2004); *Pollastrini*, 995 N.E.2d at 552 ("Substantial compliance will not be found if one uses an initial for a first or last name"); *Lyden v. Sullivan*, 57 N.Y.S.2d 334, 334 (Sup. Ct.), *aff'd*, 57 N.Y.S.2d 657 (App. Div. 1945) (holding signatures prima facie invalid when initials were used). Further, Montana law does not allow the use of initials for both a first and middle name in a signature or, by implication, a last name. *See* Section 13-27-103, MCA (West) ("If the elector is registered with a first and middle name, the use of an initial instead of either the first or middle name, but not both names, need not disqualify the signature.").

41.    Here, the Petition contains at least 51 signatures that were originally counted as valid, but are, in fact, invalid, because the signature on the Petition is abbreviated or uses initials, but the voter registration signature contains the full name (or vice versa). *See* Ex. E to Dick Aff., at 18-35; Ex. F to Dick Aff., at 14-18. In terms of House District breakdown, at least 7 signatures are invalid on this basis in House District 19; 13 signatures in House District 20; 9 signatures in House

District 21; 2 signatures in House District 43; 1 signature in House District 54; 2 signatures in House District 56; 6 signatures in House District 80; 7 signatures in House District 83; and 4 signatures in House District 84.

     **iii.**     **Petition Entries are Invalid Because Full Names (Consisting of a First and Last Name) Are Not in Substantially the Same Manner as One Name (Either the First or Last Name)**

42.     Petition signatures are invalid when they omit a first or last name, and the reference signature contains both names (or vice versa). *See, e.g., Pollastrini*, 995 N.E.2d at 550 (rejecting signatures that did not include a first name at all); *Matter of Fusco v. Miele*, 275 A.D.2d 426, 426 (N.Y. App. Div. 2000) (finding petition signatures invalid "consisting only of the first name of the signers … even though they were accompanied by the full name of the signers printed next to the signatures").

43.     Here, the Petition contains at least 11 signatures that were originally counted as valid, but are, in fact, invalid, because the signature on the Petition only contains a first or last name, but the voter registration signature contains the full name (or vice versa). *See* Ex. E to Dick Aff., at 11-17; Ex. F to Dick Aff, at 11-12; Ex. A to Bolger Aff., at 22-24. In terms of House District breakdown, at least 1 signature is invalid on this basis in House District 19; 2 signatures in House District 20; 1 signature in House District 54; 1 signature in House District 56; 2 signatures in House District 80; 2 signatures in House District 83; and 2 signatures

in House District 84.

### iv.    Signatures are Invalid When a Different Name is Used in the Voter File Signature

44.    Signatures on a petition are invalid when they use a different name than that used in the voter file signature. *See, e.g., in re Nader*, 865 A.2d at 175 (finding "[s]ignatures using nicknames . . . that differ from voter registration cards are not valid," and striking such signatures) *aff'd sub nom.* 580 Pa. at 134; *Taft*, 64 Ohio St. 3d at 197 (invalidating signature where last name differed in voter registration file). For example, a signature containing two last names connected by a hyphen does not match a voter file signature that contains only one last name. *See, e.g., Taft*, 64 Ohio St. 3d at 197 (affirming rejection of the signature of "Loretta Sheldon" on the petition, when "Loretta Floyd-Sheldon" was the name listed on the registration").

45.    Here, the Petition contains at least 9 signatures that were originally counted as valid and are, in fact, invalid, because the signature on the Petition contains a different name than the voter registration signature. *See* Ex. E to Dick Aff., at 37-41; Ex. F to Dick Aff., at 20-21; Ex. A to Bolger Aff. at 56-58. In terms of House District breakdown, at least 1 signature is invalid on this basis in House District 20; 1 signature in House District 21; 1 signature in House District 43; 1 signature in House District 54; 2 signatures in House District 80; 1 signature in House District 83, and 2 signatures in House District 84.

### v.  Signatures are Invalid when a Name is Spelled Differently in the Voter File

46.     Signatures on a petition are invalid when they are spelled differently than the name in the voter file. *See Willis v. Fertterer*, 2013 MT 282, ¶ 30, 372 Mont. 108, 114, 310 P.3d 544, 548 (2013) (describing that the fact that the "spelling of the purported notarized signature failed to match the spelling of the grantor's name" assisted in overcoming the presumption of validity of a notarized signature) (citation omitted); *Lundahl v. Gregg*, 2014 WY 110, ¶ 15 (2014) (different spellings on notary stamp were sufficient to question validity of affidavits of service).

47.     Here, the Petition contains at least 2 signatures that were originally counted as valid that are, in fact, invalid, because the signature on the Petition is spelled differently than the signature in the voter registration file. *See* Ex. E to Dick Aff., at 43; Ex. A to Bolger Aff. at 58. In terms of House District breakdown, at least 1 signature is invalid on this basis in House District 21 and 1 in House District 83.

### vi.  Petition Entries are Invalid When One Name is in "Chicken Scratch," and the Other is More Clearly Articulated

48.     Signatures are invalid when one name is in "chicken scratch," and the other is more clearly articulated. *See Quercia*, 87 A.D.3d at 653 ("Voters' signatures on designating petitions that do not meaningfully compare with the

signatures on the same voters' registration forms should be invalidated.") (print

and cursive difference).

49.       Here, the Petition contains at least 15 signatures that were originally

counted as valid, but are, in fact, invalid, because the signature on the Petition is in

"chicken scratch," whereas the voter file signature is more clearly articulated. *See*

Ex. E to Dick Aff., at 45-50; Ex. F to Dick Aff., at 23-25; Ex. A to Bolger Aff. at

60-66. In terms of House District breakdown, at least 2 signatures are invalid on

this basis in House District 19; 3 in House District 20; 2 in House District 21; 2 in

House District 43; 1 in House District 56; 2 in House District 80; and 3 in House

District 83.

### vii.    Petition Entries are Invalid Because of Other Differences Recognized by the Secretary of State

50.       According to the Secretary, signatures are reviewed to see if: (1)

"capital letters match"; (2) "letters tail off alike"; (3) "letter spacing is the same";

(4) "space between signature and the line is the same"; (5) the "beginning and

ending of signature"; (6) the "'t' crossing, 'i' and 'j' dotting, and letter"; (7) "pen

pressure is the same"; and (8) whether signatures are from the same household.

Absentee Ballot Best Practices, 2016 Montana Election Administrator Certification

Training, Montana Secretary of State,

http://sos.mt.gov/Portals/142/Elections/Documents/Absentee-Best-Practices.pdf.

Thus, signatures that do not match on one or more of the above bases are invalid.

*See id.*

51.      Here, the Petition contains at least 50 signatures that were originally

counted as valid, but are, in fact, invalid based on the differences recognized by the

Secretary. *See* Ex. E to Dick Aff., at 52-76; Ex. F to Dick Aff., at 27-46; Ex. A to

Bolger Aff., at 68-69. In terms of House District breakdown, at least 2 signatures

are invalid on this basis in House District 21; 9 in House District 43; 6 in House

District 54; 5 in House District 56; 11 in House District 80; 10 in House District

83; and 7 in House District 84.

### 3. Petition Entries that Lack a Valid Date are Invalid

52.      Petition entries that lack a correct date are invalid. *See* Montana

Secretary of State, Political Party Qualification Petition, Ex. 1 (requiring Montana

voters to provide the "Date Signed"); Section 13-10-601(2)(a), MCA (requiring a

political party to "present[] a petition, in a form prescribed by the secretary of

state, requesting the primary election"); *Matter of DiSanzo v. Addabbo*, 76 A.D.3d

655, 656-657 (N.Y. App. Div. 2010) (holding signatures invalid when they contain

the "incorrect date") (citations omitted). Along the same lines, a petition entry is

invalid if the "Date Signed" entry is altered without the signer's initials. *See Matter*

*of Merrill v. Fritz*, 120 A.D.3d 689, 690 (N.Y. App. Div. 2014) (finding

"unexplained and uninitialed alterations to the dates on numerous signature lines,

many of which were contained on petition sheets for which the appellant himself

was the subscribing witness, required the invalidation of the designating petition").

53.        Here, the Petition contains at least 9 signatures that were originally

counted as valid, but are, in fact, invalid because they contain an incorrect date or

an altered date without the signer's initials. *See* Ex. A to Dick Aff.; Ex. B to Dick

Aff.; Ex. C to Dick Aff.  In terms of House District breakdown, at least 1 signature

is invalid on this basis in House District 21; 1 in House District 43; 3 in House

District 80; and 4 in House District 83.

### 4. Petition Entries That Do Not Contain a Printed Name are Disqualified

54.        Petition entries that do not contain a printed name in the section

designed for the "Printed Last Name and First and Middle Initials" are invalid. *See*

Montana Secretary of State, Political Party Qualification Petition, Ex. 1 (requiring

Montana voters to list their "Printed Last Name and First and Middle Initials");

Section 13-10-601(2)(a), MCA (requiring a political party to "present[] a petition,

in a form prescribed by the secretary of state, requesting the primary election")

(emphasis added); *Ni v. Slocum*, 196 Cal. App. 4th 1636, 1645 (2011) (noting that

the initiative petition requirement that "the voter include his or her printed name

and address is critical to the verification process"); *Clark v. City of Aurora*, 782

P.2d 771, 779 (Colo. 1989) (noting that co"[t]he requirement of a printed name

after the signature serves . . . only to guard against fraud in the petition process").

55.        Here, the Petition contains at least 5 signatures that were originally

counted as valid, but are, in fact, invalid because they do not contain the printed

last name (and at least first initial) of the signer. *See* Ex. D to Dick Aff. In terms of

House District breakdown, at least 1 signature is invalid on this basis in House

District 43; 1 in House District 80; 1 in House District 83; and 2 in House District

84.

### 5. Petition Signatures are Disqualified When They are Not from a Registered Montana Voter and When They were Erroneously Matched to a Different Montana Voter

56.     The Political Party Qualification Statute requires a petition to contain

signatures of "a number of registered voters," Section 13-10-601(2)(b), MCA, and

gives county officials the duty to "check the names of all signers to verify they are

registered electors of the county." Section 13-27-303, MCA (emphasis added); *see*

*also* Section 13-10-601(2)(c), MCA (incorporating the requirements of Section 13-

27-303, MCA)). Thus, Petition signatures from persons who are not Montana

registered voters are invalid, as are signatures that are erroneously matched to the

wrong Montana registered voter.

57.     Here, at least 6 Petition signatures originally counted as valid were

matched erroneously and are thus invalid. *See* Laliberte Aff., at 5-8; Ex. F to

Laliberte Aff. In particular, two signatures matched to registered voters in House

District 21 and one signature matched to a registered voter in House District 54

are, in fact, the signatures of different registered voters who reside in different

House Districts. Such signatures are invalid. In addition, 3 signatures matched to registered voters in House Districts 21, 56, and 83 are, in fact, signatures of persons who are not registered to vote in Montana and are thus invalid.

## V.    CLAIM FOR RELIEF

### (Claim for Declaratory Relief)

58.    Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint, as though fully set forth herein.

59.    This is an action for declaratory relief pursuant to the Montana Uniform Declaratory Judgments Act, Section 27-8-101 et. seq., MCA.

60.    Section 13-10-601(2)(b) allows a political party to qualify to nominate its candidates for primary election by submitting a certain number of signatures on a petition. In particular, the statute sets forth that a "petition must be signed by . . . . registered voters in more than one-third of the legislative districts equal to 5% or more of the total votes cast for the successful candidate for governor at the last general election in those districts or 150 electors in those districts, whichever is less."

61.    In order to satisfy Montana law, signatures on such a petition are required to be in substantially the same manner as the individuals' voter registration file signatures. *See* Section 13-10-601(2), MCA; Montana Secretary of State, Political Party Qualification Petition, Ex. 1; see also Section 13-27-103,

31

MCA (West) ("A signature may not be counted unless the elector has signed in substantially the same manner as on the voter registration form."); Section 13-27-303, MCA (requiring county officials to "randomly select signatures on each sheet or section and compare them with the signatures of the electors as they appear in the registration records of the office"). In addition, petition entries are required to include the "Date Signed" and the "Printed Last Name and First and Middle Initials." Montana Secretary of State, Political Party Qualification Petition, Ex. 1; *see also* Section 13-10-601(2), MCA (requiring a political party to "present[] a petition, in a form prescribed by the secretary of state, requesting the primary election").

62.     The Petition here fails to meet the requirements of Section 13-10-601(2), MCA, because it does not contain the requisite number of valid signatures from at least 34 House Districts. Many of the petition entries, at least 180 of them, originally counted towards meeting the threshold number of signatures in each House District are, in fact, invalid because there is no valid signature on the Petition, the Petition signature does not match the voter file signature, the Petition entry lacks a valid date or printed name, and/or county officials did not verify that the individual who signed the Petition is a registered Montana voter or the individual was not a registered voter in Montana. Thus, the Petition is invalid and does not qualify the Green Party to be on the primary ballot.

63.      The Court should declare the Petition, as well as the Secretary's certification of the Petition, legally insufficient under Section 13-10-601(2)(b), MCA. In addition, the Court should enjoin the Secretary, his agents, officers, employees, and all persons acting in concert with each or any of them from implementing, enforcing, or giving any effect to certification of the Green Party's Petition under Section 13-10-601, MCA.

## VI.    PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that this Court:

A. Declare that the Petition is invalid under Section 13-10-601, MCA;

B. Declare that the Secretary's certification of the Petition is invalid;

C. Order that the Secretary of State, as well as his agents, officers, employees, and successors, and all persons acting in concert with each or any of them, is enjoined from implementing, enforcing, or giving any effect to certification of the Green Party's Petition under Section 13-10-601, MCA, including, but not limited to, qualifying the Green Party for primary election; and

D. Grant such other or further relief as the Court deems just and proper.

Dated this 2nd day of April, 2018



33

Peter Michael Meloy
**MELOY LAW FIRM**
P.O. Box 1241
Helena, MT 59624
(406) 442-8670
*Attorney for Plaintiffs*